**Michael J. KOLBECK, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Tait Design and Machine, and Charles N. Tait, Defendants.**

**Civ. A. No. 88–0714.**

United States District Court, E.D. Pennsylvania.

Aug. 6, 1990.

Larry E. Coben, Philadelphia, Pa., for plaintiff.

Edward A. Gray, Donald Camhi, Philadelphia, Pa., George J. Lavin, Jr. & Associates, Stephen J. Brogan, Jones, Day, Reavis and Pogue, Washington, D.C., for defendants.

## MEMORANDUM

HUYETT, District Judge.

In this products liability action, defendant General Motors Corporation ("General Motors") wishes to resurrect what has been a closed issue for nearly three years under Pennsylvania law. General Motors has filed a motion in limine seeking to permit the introduction of evidence at trial of plaintiff Michael J. Kolbeck's ("Kolbeck") non-use of his seat belt at the time of the accident. On June 26, 1990, I granted General Motors' motion. I write now to explain my reasons.

### I.

In the early morning of October 25, 1985, Kolbeck was a passenger in the right front seat of 1980 Pontiac Grand Prix operated by Conrad Keesey. While Keesey attempted to execute a left hand turn onto Fruitville Pike from the Route 30 exit ramp in Manheim Township, Pennsylvania, his vehicle was struck on the left front by anoth-

er vehicle operated by Charles Tait.[1] Tait drove through a red light prior to the accident.

Thrown forward and to the left by the impact, Kolbeck's head struck the rearview mirror. The rearview mirror broke off leaving a metal stem with a rigid, jagged edge. Kolbeck suffered a small laceration and puncture wound of the left temple. According to Kolbeck's experts, the impact caused his head to stop abruptly and a mechanical distortion of his spinal cord. Consequently, Kolbeck has been a quadriplegic since the date of the accident. Neither Kolbeck or Keesey were wearing their seat belts at the time of the accident.[2]

Kolbeck alleges that "[t]he rear view mirror attachment/assembly system was defectively and carelessly designed and/or installed." *See* Final Pretrial Order approved by the Court on June 6, 1990 at 3.[3] General Motors argues that evidence of non-use of seat belts is admissible because: (1) the statutory prohibition against the admission of the non-use of a seat belt can not be applied retroactively to this accident and that Pennsylvania law at the time of this accident permitted such evidence; (2) in a "crashworthiness" case, the manufacturer must be permitted to show non-use of a seat belt because the seat belt is a part of the crashworthiness design of the vehicle; (3) the non-use of a seat belt is relevant to issues of comparative negligence and enhancement of injuries when assessing damages; and (4) a prohibition of this type violates the equal protection and due process clauses of the fourteenth amendment.

## II.

Before addressing the merits of General Motor's first argument, I must outline the state court decisions concerning the question of whether a "seat belt defense" exists under Pennsylvania law and the history of the Occupant Protection Act, 75 Pa. C.S.A. §§ 4581–85.

In 1979, the Superior Court of Pennsylvania first grappled with the issue in *Parise v. Fehnel*, 267 Pa.Super. 79, 406 A.2d 345 (1979). In *Parise*, the plaintiff was injured, as a result of a motor vehicle collision, when she was thrown forward causing her chest to hit the steering wheel and her legs to hit the dashboard. She was not wearing a seat belt at the time of the accident. The trial court denied the defendant's request for a jury instruction which advised the jury that it could consider the non-use of the seat belt in determining the amount of damages to award to plaintiff. The trial court's decision was based upon the absence of medical or other evidence from which the jury could determine to what extent the plaintiff's injuries would have been lessened if she wore a seat belt. The appellate court affirmed, stating that "to have granted [the defendant's] requested point for charge would have been an invitation to the jury to engage in 'pure speculation on a very material point.'" *Id.* at 81, 406 A.2d at 346.

Notwithstanding this conclusion, the *Parise* court cautioned that "[o]ur decision today should not be seen as foreclosing the possibility of a so-called 'seat belt defense' in future cases. There is a split of authority as to the seat belt defense." *Id.* at 82, 406 A.2d at 347. Finally, the court took the position that the seat belt defense *might* be allowed if the defendant "introduced expert testimony showing a relationship between the plaintiff's injuries and his failure to use seat belts." *Id.*

On November 1, 1983, the Pennsylvania legislature enacted the Child Passenger Protection Act, *see* 1983 Pa. Laws 195, No. 53, which was to *take effect immediately.* The Child Passenger Protection Act required that all children under the age of four be fastened "securely in a child passenger restraint system" by a parent or legal guardian. *See* 75 Pa. C.S.A.

---

**1.** Charles Tait and Tait Design and Machine were formerly defendants in this action. However, the claims against them have been settled.

**2.** Keesey suffered only minor injuries to his hip.

**3.** The final pretrial order, once approved by the Court, supersedes all pleadings and governs the trial of the case. *See* Local Rule of Civil Procedure 21(d)(2)(a).

§ 4581(a). The Act further provided as follows:

> In no event shall a violation or alleged violation of this subchapter be used as evidence in a trial of any civil action; nor shall any jury in any civil action be instructed that any conduct did constitute or could be interpreted by them to constitute a violation of this subchapter, nor shall failure to use a child passenger restraint system be considered as contributory negligence nor shall failure to use such a system be admissible as evidence in the trial of any civil action.... 

75 Pa.C.S.A. § 4581(e).

In a slightly different context, the Pennsylvania Superior Court revisited this issue in 1986. *See McKee v. Southeast Delco School Dist.*, 354 Pa.Super. 433, 512 A.2d 28 (1986), *appeal den.*, 514 Pa. 631, 522 A.2d 559 (1987). In *McKee*, a six year old child was injured when she fell from her seat while riding as a passenger on a school van. The child, not wearing a seat belt, fell after the school van stopped abruptly to avoid a collision. The trial court granted the plaintiff's motion for a new trial because it concluded that the exclusion of evidence of non-use of seat belts to restrain the child was error. The appellate court affirmed, concluding as follows:

> Under the facts of the instant case, a jury could have found that the operator of the school van had a duty to restrain Cheryl and other children in the van by using available seat belts.... [T]he school district instructed the [bus company] that children riding in its vans were to be restrained by seat belts.... [The bus company] caused instructions to be given to its drivers that seat belts were to be utilized.... A failure to restrain the children who were passengers in the school van, therefore, could have been found by the jury to be a breach of the operator's duty to exercise care to protect the children from injury. We agree with the trial judge that it was error to

disallow evidence of this very significant circumstance.

*Id.* 354 Pa.Super. at 436–37, 512 A.2d at 29.[4]

On November 23, 1987, the Pennsylvania legislature modified the Child Passenger Protection Act by enactment of the Occupant Protection Act. *See* 1987 Pa.Laws 399, No. 82. Like the Child Passenger Protection Act, the Occupant Protection Act was to *take effect immediately*. Pertinent portions of the Occupant Protection Act provide as follows:

> (a) Occupant protection.—
>
> \*    \*    \*    \*    \*    \*
>
> (2) Except for children under four years of age and except as provided in paragraph (1), each driver and front seat occupant of a passenger car ... shall wear a properly adjusted and fastened safety belt system. ...
>
> \*    \*    \*    \*    \*    \*
>
> (e) Civil actions.—In no event shall a violation or alleged violation of this subchapter be used as evidence in a trial of any civil action; nor shall any jury in a civil action be instructed that any conduct did constitute or could be interpreted by them to constitute a violation of this subchapter; nor shall failure to use a child passenger restraint system or safety belt system be considered as contributory negligence no shall failure to use such a system be admissible as evidence in the trial of any civil action....

75 Pa.C.S.A. § 4581(a)(2), (e).

As stated above, the accident in this case occurred on October 25, 1985 prior to the enactment of the Occupant Protection Act. Two opinions of the Pennsylvania Superior Court impact upon the question of whether 75 Pa.C.S.A. § 4581(e) should apply to this case. First, in *Grim v. Betz*, 372 Pa.Super. 614, 539 A.2d 1365 (1988), the court was faced with a similar situation. The motor vehicle accident in question occurred prior to the amendments to 75 Pa.C.S.A. § 4581

---

**4.** Later, the court emphasized that, because there was no collision, the plaintiff's contention was that the failure to use restraints did not exacerbate the injuries but caused them entirely.

*Id.* 354 Pa.Super. at 437, 512 A.2d at 30. It is also important to note that the Child Protection Act did not apply.

on May 26, 1983. The accident involved a collision which resulted in the injury of Gloria Grim and her sister-in-law, the driver and front seat passenger respectively, and three children above the age of four occupying the rear seat. Neither Gloria Grim or her sister-in-law were wearing a seat belt. Also, in the back seat was Gloria's three year old son, without any restraining device, who died as a result of the collision.

Suit was filed on or about July 25, 1984. Later, in late 1985 or early 1986, the defendants filed a motion to amend their answers to assert the seat belt defense. The trial court denied this motion. Defendants appealed. While the appeal was pending, the legislature enacted the Occupant Protection Act.

Thereafter, the Superior Court *en banc* affirmed on April 4, 1988. In so doing, the court explained:

As such, it would appear that [defendants] are substantially correct in their assertions that the trial court's decision to preclude amendment to plead a "seat belt defense", as contrary to law, was erroneous on the basis of the state of the law on [the date of its decision].

However, a reviewing court may affirm the decision of the trial court if the result is correct on any ground, without regard to the grounds relied upon by the trial court. Moreover it is well settled that an intervening change in the law must be applied to cases which are in the throes of direct appeal when the change occurs. We find that an intervening change in the law has occurred which mandates affirmance of the trial court's denial of permission to amend.

On November 23, 1987, the availability of a "seat belt defense" in Pennsylvania, ceased to be an open question, with the passage of [the Occupant Protection Act]. ...

\* \* \* \* \* \*

The import of the amendments is clear: the legislature has decided that a defense of comparative negligence, in the form of a "seat belt defense", premised on either the failure of an adult to employ a seat belt for his own protection, or on failure of an adult to protect his minor child with seat belts, will not be available in any civil action in this Commonwealth. *Id.* at 622, 539 A.2d at 1368–69 (footnote omitted; citations omitted). Finally, the court stated that the amendments were now controlling law, because they were to take effect immediately upon passage of the Act.[5] *Id.* The *Grim* court never explicitly discussed principles of retroactivity.

By a vote of two to one, the court in *Stouffer v. Pennsylvania Dep't of Transportation*, 127 Pa.Commw. 610, 562 A.2d 922 (1989) reached a different conclusion. First, relying upon *Parise, McKee,* and *Grim,* the majority concluded that at the time of the accident, January 18, 1985, Pennsylvania law permitted the seat belt defense. *Id.* 127 Pa.Cmwlth. at 612–15, 562 A.2d at 923–24. Next, the majority concluded that the statutory bar of the Occupant Protection Act was a substantive change in the law which could not be applied retroactively. *Id.* 127 Pa.Cmwlth. at 613–17, 562 A.2d at 924–25.

In a dissent, Judge Palladino disagreed with both prongs of the majority's analysis. Initially, she argues that the majority's reliance upon *McKee* is misplaced and that no common law duty to wear a seat belt has ever been recognized in the Commonwealth. And, second, she argues, relying on *Grim,* that the Occupant Protection act was a change in procedural law which should be applied to all causes of action which arose prior to its enactment but did

---

**5.** Importantly, this accident occurred over five months prior to the enactment of the Child Passenger Protection Act as well. Yet, relying on the initial version of 75 Pa.C.S.A. § 4581(e), the Superior Court determined that the trial court correctly concluded that "the state of the law at [the time of the trial court's decision] *did* preclude any attempt to plead Gloria Grim's

negligence in failing to provide a seat belt or child restraint device to protect Robert Grim." *Id.* 372 Pa.Super. at 619–20, 539 A.2d at 1367–68 n. 6. Clearly, this amounts to judicial approval of the "retroactive" application of the statutory prohibition against evidence of the lack of a passive restraint system in any civil action.

not come to trial until afterwards. *Id.* 127 Pa.Cmwlth. at 615–18, 562 A.2d at 925–26.

## III.

From this less than clear backdrop, I must resolve two issues. First, whether 75 Pa.C.S.A. § 4851(e) should apply to all causes of action which come to trial after its enactment even if the cause of action arose prior to the enactment. While Kolbeck argues that I should follow *Grim* and General Motors argues that I follow *Stouffer,* neither party addresses Pennsylvania law regarding the retroactive application of statutory provisions. And second, if I conclude that 75 Pa.C.S.A. § 4851(e) does not control this case, I must determine whether Pennsylvania law permitted the seat belt defense at the time of this accident.

Neither question is a simple one. In respect to the former, I am faced with two seemingly contradicting intermediate appellate court opinions. As to the latter, if I need reach it, I must not only conclude how the Pennsylvania Supreme Court would decide an issue in the face of less than unequivocal appellate court opinions, but I must also determine the answer at a particular point in time without consideration of subsequent legislative events.

▮ Federal courts sitting in diversity must ascertain and apply state law. *See Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940); *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When presented with a novel issue of law and applicable state precedent is absent, a federal court must predict how the highest court of the state would resolve the issue. *Prudential Property & Casualty Ins. Co. v. Pendleton,* 858 F.2d 930, 934 (3d Cir. 1988). In so doing, a federal court may examine all existing resources, including Restatements, law reviews and well-reasoned authority from other jurisdictions. *Kohr v. Raybestos–Manhattan, Inc.,* 522 F.Supp. 1070, 1074 (E.D.Pa.1981).

Since a federal case will often fall outside the scope of those precise issues to which the state's highest court has spoken, due regard, but not conclusive effect, should be given to decisional law of lower state courts. *Burke v. Maassen,* 904 F.2d 178, 182 (3d Cir.1990); *see also McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 662 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980); *Fickinger v. C.I. Planning Corp.,* 556 F.Supp. 434, 438 (E.D.Pa.1982). In fact, the United States Supreme Court has stated:

> An intermediate appellate state court ... is datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*West v. A.T. & T. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940) (quoted in *Commissioner v. Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967)); *see also Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271, 273–74 (3d Cir.1985) ("Although lower state court decisions are not controlling on an issue on which the highest court of the state has not spoken, federal courts must attribute significant weight to these decisions in the absence of any indications that the highest state court would rule otherwise."); *Adams v. Cuyler,* 592 F.2d 720, 725 n. 5 (3d Cir.1979) ("Federal courts ... may consider the pronouncements of state intermediate appellate courts as an indication of how the state's highest court would rule."), *aff'd,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981).

### A. *Retroactivity.*[6]

▮ "No statute shall [be] construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S.A. § 1926. This principle becomes relevant only after it has been determined that a proposed operation of the statute would be retrospective. *Gehris v. Pennsylvania Dep't of Transportation,* 471 Pa. 210, 369 A.2d 1271, 1273 (1977). A statute

---

**6.** For the purpose of discussion of retroactivity, I shall assume that Pennsylvania law permitted the use of a seat belt defense at the time of the accident in this case.

does not operate retrospectively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment. *Id.* (statute which permitted condemnee to recover limited appraisal expenses was not applied retroactively when condemnation occurred prior to enactment and expenses were incurred after enactment); *see also Creighan v. Pittsburgh*, 389 Pa. 569, 132 A.2d 867 (1957) (application of "Heart and Lung Act" to a fireman with tubercular condition prior to the enactment of the Act was not a retroactive application as fireman only received benefits from the date of enactment). In other words, a retroactive law is one that relates back to a previous transaction to give a legal effect different from that which it had under the law in effect at the time. *See R & P Services, Inc. v. Pennsylvania Dep't of Revenue*, 116 Pa. Commw. 230, 541 A.2d 432, 434 (1988); *Pennsylvania Dep't of Labor and Industry, Bureau of Employment Security v. Pennsylvania Engineering Corp.*, 54 Pa. Commw. 376, 421 A.2d 521, 523 (1980).

If I apply section 4581(e) to this action, then it would generate a different legal effect than the law in effect at the time, assuming that a seat belt defense was available at the time of the accident. Therefore, I must determine whether the General Assembly "clearly and manifestly" intended retroactive application of section 4581(e).

■ It is well settled that "statutes, other than those affecting procedural matters, must be construed prospectively except where the legislative intent that they shall act retrospectively is so clear as to preclude all question as to the intention of the legislature." *Farmers National Bank & Trust Co. v. Berks County Real Estate Co.*, 333 Pa. 390, 5 A.2d 94, 95 (1939); *Costa v. Lair*, 241 Pa.Super. 517, 363 A.2d 1313, 1314 (1976). Retroactive application of a statute is supported when the statute does not impair a contract or disturb a vested right, but only varies remedies, cures defects in proceedings otherwise fair, and does not vary existing obligations. *Smith v. Fenner*, 399 Pa. 633, 161 A.2d 150, 154

(1960). Whether vested rights are affected is not the sole criterion for determining whether a particular statute should be given retroactive application. *Costa v. Lair*, 363 A.2d at 1315 n. 4.

■ As stated by the majority in *Stouffer*, "a legislative determination that certain conduct cannot be considered in a negligence case is substantive not mere procedure." *Stouffer*, 562 A.2d at 925. This conclusion is supported by the decision of the Pennsylvania Superior Court in *Costa v. Lair*. The *Costa* court concluded that Pennsylvania's newly enacted comparative negligence statute could not be applied retroactively to causes of action which arose prior to its effective date. The court explained its ruling as follows:

> Prior to the effective date of the Act, a plaintiff was required to be free of any personal fault contributing to his injury in order to establish liability in a civil action for negligence. ... Under the Act, however, a plaintiff whose negligence is less than that of the defendant is not precluded from recovery due to his contributory negligence, but is allowed recovery reduced by the proportion of his fault. Thus, if applied retroactively, the Act would create legal liability for damages which did not exist at the time the accident occurred.

*Costa v. Lair*, 363 A.2d at 1314–15 (footnote omitted). *See also Browne v. Wheel–Horse Products, Inc.*, 408 F.Supp. 415 (E.D.Pa.1976) (amendment to Pennsylvania's workmen's compensation statute which barred the right of indemnification and contribution from the employer effected a change in the substantive rights of the litigants and would not be applied retroactively).

Assuming that a seat belt defense did exist at the time of this accident, I conclude that application of section 4581(e) retroactively would alter the substantive rights of the litigants. Without a seat belt defense, the extent of General Motors' liability, if any, could be increased. Absent a clear intention by the legislature that section 4581(e) be applied retroactively, I shall not give it such an effect. Because the court

in *Grim* did not address the retroactivity question, I cannot afford its decision which gave section 4581(e) retroactive effect much weight.

B. *The Seat Belt Defense under Pennsylvania law.*

█ Ironically, because of the enactment of the Occupant Protection Act, the Pennsylvania Supreme Court may never speak to this issue. Nonetheless, based upon the existing intermediate appellate authority and the well-reasoned authority from other sources, I am persuaded that the Pennsylvania Supreme Court would have permitted the seat belt defense at the time of the accident in this case.

In 1979, nearly eleven years ago, in *dicta* the Pennsylvania Superior Court stated that it "might have allowed the defendant a seat belt defense if he had introduced expert testimony showing a relationship between the plaintiff's injuries and his failure to use seat belts." *Parise*, 406 A.2d at 347 (emphasis added). This *dicta* is firmly supported by two subsequent decisions which examine Pennsylvania law prior to the enactment of the Occupant Passenger Act.[7] First, while stating that the availability of a seat belt defense in Pennsylvania at the time of the enactment of the Occupant Protection Act was an "open question," the court in *Grim*, relying on the *dicta* of *Parise*, concluded that the trial court's decision that the seat belt defense was unavailable was contrary to law as it existed on March 31, 1986. *Grim*, 539 A.2d at 1367–68. Second, the two judge majority of the *Stouffer* court stated "we believe that at the time of this accident the Stouffers had a duty to wear the seat belts." *Stouffer*, 562 A.2d at 926.[8]

The seat belt defense has been widely litigated and the law on the admissibility of seat belt evidence is in a state of flux.

Some courts considering this issue have held that the non-use of available seat belts is not admissible for the purpose of demonstrating contributory negligence or for the purpose of mitigating damages. *See* Annotation, Automobile Occupant's Failure to Use Seat Belt as Contributory Negligence, 92 A.L.R.3d 9 (1979); Annotation, Nonuse of Seat Belt as Failure to Mitigate Damages, 80 A.L.R.3d 1033 (1977). Others have disallowed the evidence for the issue of liability, while permitting it for diminution of damages. Some jurisdictions have concluded that a person does not have an affirmative duty to wear a seat belt absent a statutory mandate. *See, e.g., Clarkson v. Wright*, 108 Ill.2d 129, 90 Ill.Dec. 950, 483 N.E.2d 268, 270 (1985) ("there was no statutory duty to wear a seat belt and the presence of the seat belt in the automobile did not create the duty").

Recently, state legislatures have also taken an interest in this issue. Since 1984, more than 25 other states and the District of Columbia have adopted some form of mandatory seat belt law. *See Waterson v. General Motors Corp.*, 111 N.J. 238, 544 A.2d 357, 368 n. 4 (1988). As summarized by the New Jersey Supreme Court in *Waterson*, some states' legislatures, like Pennsylvania's legislature, have rejected the admissibility of the seat belt defense. Others, like New Jersey, have left the status of the defense to their courts. Still other states have permitted the defense but substantially restricted the percentage of fault which a jury could attribute to non-use of a seat belt. *Id.*

In my opinion, faced with this issue in 1985, the Supreme Court of Pennsylvania would have adopted the *dicta* of *Parise* which was followed in *Grim* and *Stouffer*. I cannot ignore the decisions of these intermediate appellate courts. This conclusion is supported by well-reasoned authority

---

**7.** Kolbeck correctly argues that the decision in *McKee* is not a "seat belt defense" case because contributory negligence was not an issue in the case. Therefore, reliance upon this case as authority for the proposition that a seat belt defense is available in Pennsylvania is misplaced. *McKee* merely concluded that, based upon the circumstances of the case, a bus company had a duty to secure its minor passenger with seat

belts because the school district had so instructed the bus company. *See Stouffer*, 562 A.2d at 926 (Palladino, J., dissenting).

**8.** While the majority's reliance upon *McKee* might have been misplaced, it also relied upon *Parise* and *Grim*.

from other jurisdictions. *See, e.g., Melia v. Ford Motor Co.*, 534 F.2d 795, 799–801 (8th Cir.1976) (applying Nebraska law—the defective crashworthiness design theory of liability requires that the vehicle be considered as a whole and that the manufacturer be held liable for the damages caused by design defects but not for damages arising from other causes); *LaHue v. General Motors Corp.*, 716 F.Supp. 407, 416–19 (W.D.Mo.1989) (applying Missouri law—same); *Jordan v. General Motors Corp.*, 624 F.Supp. 72, 75–76 (E.D.La.1985) (applying Louisiana law—same); *Wilson v. Volkswagen of America, Inc.*, 445 F.Supp. 1368, 1371–73 (E.D.Va.1978) (applying Virginia law—same).

For the reasons stated above, I conclude that the Pennsylvania Supreme Court would have recognized the availability of the seat belt defense in 1985, and I will permit it in both phases of the trial as such evidence is relevant to issues of liability and damages.[9] Of course, plaintiff shall be permitted to introduce evidence which demonstrates a defect in the seat belt systems or tends to show that his injuries would have occurred, to the same or a lesser degree of severity, even if he were wearing the available seat belt.

### IV.

For the reasons stated above, I shall grant General Motors' motion in limine, and permit the introduction of evidence of Kolbeck's non-use of his seat belt in this action on the issues of liability and damages.

---

**9.** I note that prior to the enactment of the Occupant Protection Act, I permitted the introduction of evidence of non-use of an available seat belt by the plaintiff. *See Hanninen v. Toyota*

*Motor Corp.,* Civil Action No. 84–6013 (strict liability action); *Jabbour v. Shestak,* Civil Action No. 85–6459 (automobile negligence action).