Quinn *v.* Kumar, Appellant.

270

Argued October 6, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*James F. Manley*, with him *Burns, Manley & Little*, for appellant.

*William W. McVay*, with him *James R. Duffy*, and *McArdle, McLaughlin, Paletta & McVay*, for appellee.

OPINION BY MR. JUSTICE POMEROY, March 20, 1970:

After trial of this trespass action, the jury returned a verdict in favor of the plaintiff against one of the original defendants, Velma Kumar, individually and trading and doing business as the Sylvan Sheet Metal Company (Sylvan) in the amount of $125,000.[1] This appeal was taken from judgment entered after the court below denied Sylvan's motions for judgment n.o.v. and a new trial on the condition that plaintiff accept a remittitur of $30,000. The remittitur was accepted.

---

[1] At the close of plaintiff's evidence on liability, the Court of Common Pleas of Allegheny County entered compulsory nonsuits in favor of all the original defendants except Sylvan and all of the additional defendants except Acme Welding and Erection Co. (Acme). The propriety of these rulings is not questioned. The jury verdict exonerated Acme, plaintiff's employer, from any liability.

The plaintiff, a structural ironworker, was injured while working for Acme Welding and Erection Co. at the Mayfair Shopping Center in Bethel Park, Pa. Acme was the project's subcontractor for the erection of the structural steel. At the time, the shopping center building was only partially erected; only the steel columns, together with the steel beams which connected them, were in place. The structure was divided into a number of forty-eight foot square bays. Spanning each bay, from beam to beam, were "bar joists", steel members which were to support the roof. These bar joists were not of the same weight or strength as the steel beams and were intended to support only the roof and whatever snow might accumulate on it. The roof was to be constructed by first placing steel decking upon the bar joists and then placing insulation on top of the decking.

Although the bar joists were laid in place, they were not initially secured to the beams; they were to be secured at a later stage of construction. Approximately one week prior to March 22, 1968, the date on which plaintiff sustained his injuries, bundles of steel decking were placed upon the bar joists under the direction of Sylvan (a sub-subcontractor under defendant Funk for the installation of the decking) by a crane and crew which it had hired. Because of the weight of these bundles of steel decking and their placement away from the supporting beams, the bar joists sagged and bowed.

Shortly before the accident, the plaintiff was told by his foreman, a Mr. Dawson, to get a ladder from the far side of one of the bays. In doing so, he walked beneath five or six bar joists on which were resting two bundles of steel decking. While he was walking back with the ladder, the bar joists gave way and, together with the bundles of decking, fell upon the plaintiff causing him serious bodily injury.

Appellant contends initially that a judgment n.o.v. should have been entered in its favor because the plaintiff failed to prove any negligence on its part. As noted in the opinion of the court below, this case was given to the jury on the theory that either the conduct of Sylvan in having the bundles of decking placed on the bar joists too far out from the beams or the conduct of Acme in not securing the bar joists to the beams before allowing the bundles of decking to be placed on them, or both, could have been negligent and the proximate cause of the collapse which injured the plaintiff. The jury apparently found that negligent placement of the decking caused the accident, and so found against Sylvan. We are of the opinion that the evidence supports this verdict.

Mr. Dawson, an experienced ironworker and Acme's foreman supervising plaintiff at the time of the accident, testified that the further from the beam the decking bundles are placed, the more strain is placed on the bar joists. He also testified that the bundles should have been placed on the joists closer to the points where they rested on beams in order to afford more support. From this testimony, which was uncontroverted, the jury could infer that the decking was negligently placed. We have often said that in cases of falling objects the proof necessary to establish negligence under the circumstances need be only slight. *Stewart v. Morow*, 403 Pa. 459, 462, 170 A. 2d 338 (1961); *Rucinski v. Cohn*, 297 Pa. 105, 114, 146 Atl. 445 (1929); *Dougherty v. Phila. Rapid Transit Co.*, 257 Pa. 118, 124, 101 Atl. 344 (1917); *Murray v. Frick*, 277 Pa. 190, 193, 121 Atl. 47 (1923). The evidence in this case was sufficient to satisfy that standard, and to allow the case to go to the jury on the issues of negligence and proximate cause.

The cases relied upon by appellant are inapposite in that in none of them was there evidence of negligent

conduct which caused the object involved to fall, whereas the record here contains such evidence. See, e.g., *Stewart v. Morow, supra; Direnzo v. Pittsburgh Bridge & Iron Works*, 265 Pa. 561, 109 Atl. 279 (1920); *Sumey v. Fayette County*, 298 Pa. 93, 147 Atl. 851 (1929).

Appellant also contends that it was entitled to judgment n.o.v. because the plaintiff was guilty of contributory negligence as a matter of law. From the testimony of Mr. Dawson it appears that he and the members of his crew, including the plaintiff, were aware prior to the accident that the bar joists under the decking had bowed. Under these circumstances, appellant argues, plaintiff knew or should have known that a dangerous condition existed, and, by voluntarily entering the place of danger, he was guilty of contributory negligence.

The issue of contributory negligence was submitted to the jury and they apparently found that the plaintiff did not fail to exercise the caution of a reasonable man in walking under the bar joists. We are asked to hold, as a matter of law, that he did.

In resolving this issue, several legal principles are relevant. First, as we have often stated, "[c]ontributory negligence will be declared as a matter of law only where it is so clear that there is no room for fair and reasonable disagreement as to its existence." *Szukics v. Ruch*, 367 Pa. 646, 649, 81 A. 2d 903 (1951) and cases there cited. For a more recent enunciation of the same principle see *Gregorius v. Safeway Steel Scaffolds Co.*, 409 Pa. 578, 582, 187 A. 2d 646 (1963) and cases there cited. Second, "[w]here a person, having a choice of two ways, one of which is perfectly safe, and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence and cannot recover." *DeFonde v. Keystone Valley Coal Co.*, 386 Pa. 433, 434, 126 A. 2d 439 (1956) and cases there cited. Third,

"[i]n determining the standard of conduct of one who is injured in the performance of his employment, the working conditions and all of the circumstances incident thereto, including his obligation to do his job, must be considered." *Gregorius v. Safeway Steel Scaffolds Co., supra*, at 584. And fourth, "[w]hen a workman in the discharge of his duties proceeds from a place where it is necessary for him to be to another place where it is necessary for him to go, the law will not proclaim him guilty of contributory negligence if he moves over a route unknown to him, in the exercise of his normal faculties, to be dangerous." *Cooper v. Heintz Mfg. Co.*, 385 Pa. 296, 307, 122 A. 2d 699 (1956).

Plaintiff, having sustained a concussion, had no recollection of the accident or the events immediately preceding it. He could not, therefore, testify as to his motivation in choosing to walk under the bar joists or his assessment of the danger involved. Mr. Dawson, who was present at the time of the accident, testified, however, that plaintiff had chosen to walk beneath the bar joists because a ridge of higher ground existed there running between puddles of water on each side. Thus, this route was the most convenient. Because he was acting pursuant to an instruction from his foreman in obtaining the ladder, it may be inferred that this route was also the most expeditious. In his trade as a structural ironworker, plaintiff had had considerable experience around and upon unfinished steel skeletons, including precarious climbing on structural steel framework. He was required to exercise only due care under the circumstances of his employment and his experience. *Powell v. T. Bruce Campbell Construction Co.*, 412 Pa. 456, 194 A. 2d 883 (1963). Appellant contends that plaintiff's experience should have heightened his appreciation of the danger presented by these sagging bar joists. At the same time, however, his experience would have made him less timid around and upon

structural steel work and better qualified than a non-steelworker to assess the degree of danger presented by a particular situation.

Plaintiff had little reason to appreciate that these bowed bar joists represented a significant danger to him. They had remained stationary and, though bowed, had supported the decking bundles for a week. In going to get the ladder almost immediately before the accident, he had taken the same route without mishap.

Applying the legal principles summarized above to the facts of this case, we believe that reasonable minds could well have differed as to whether the plaintiff unreasonably placed himself in a situation known to him to be dangerous. We cannot hold, therefore, that plaintiff was contributorily negligent as a matter of law. The motion for judgment n.o.v. on this ground was properly denied.

Appellant contends, in the alternative, that it is entitled to a new trial because the verdict (a) was against the weight of the evidence, and (b) was excessive.

The court *en banc* refused to grant a new trial on the ground that the verdict was against the weight of the evidence. We will not reverse a court's exercise of discretion in granting or refusing to grant a new trial on this ground unless there has been a clear abuse of that discretion. *Brown v. McLean Trucking Co.*, 434 Pa. 427, 429-30, 256 A. 2d 606 (1969) and cases there cited. On the basis of the evidence reviewed above, we find no such abuse here.

On the second ground advanced for the new trial, the court *en banc* did find that the jury verdict of $125,-000 was excessive and ordered a remittitur of $30,000. Appellant contends that even the verdict as reduced to $95,000 is excessive.

The medical testimony showed that plaintiff had received a compound fracture of the left humerus with a permanent loss of about twenty percent in extension

and flexion of the elbow and a compression-type fracture of the tenth thoracic vertebra which resulted in a slight, permanent, hump-back deformity. He also sustained a concussion and a ten-inch laceration of the scalp. He was hospitalized for 38 days and unemployed for almost a year. The testimony concerning the extent of plaintiff's future disability as a structural ironworker was conflicting, but both medical experts agreed that he would be unsuited to working very far above the ground, a disability which would limit the amount of work available to him in his trade.

In awarding the remittitur, the court below was of the opinion that the greater part of the verdict must have constituted an award for loss of future wages. The court noted, however, that plaintiff was employed at the time of the trial as a welder and foreman for Acme and was earning more per hour than he had before the accident. The court's doubt as to the diminution in the plaintiff's future earning power led it to consider the verdict excessive, and to order the remittitur.

While we agree with the trial court that the original verdict was excessive, we must consider the verdict as reduced. As reduced, it was comprised of special damages of $12,365 and loss of future earning power and pain, suffering and inconvenience aggregating $82,635. We of course have no way of knowing how much the jury allotted to these two important items, and we need not speculate. Suffice it to say that the injuries were undoubtedly serious and painful, and that although a good recovery was had, there was impairment of ability as a structural ironworker to work above the second story level, a limiting factor over plaintiff's work-life expectancy of approximately twenty-eight years. We cannot say that the award shocks our sense of justice. *Weed v. Kerr,* 416 Pa. 233, 235, 205 A. 2d 858 (1965). Thus, we find no abuse of discretion on

the part of the lower court in refusing to grant a new
trial upon acceptance of the remittitur.

Judgment affirmed.